FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 AUG 19 A 11: 43
CLERK_____
SO. DIST. OF GA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

UNITED STATES OF AMERICA,

v.

CASE NO.: CR213-027

LARON BENNETT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Laron Bennett ("Defendant"), who has been charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j), filed a Motion to Suppress Evidence. The Government filed a Response. The undersigned conducted an evidentiary hearing on this matter on August 13, 2013, at which Lieutenant Anthony Smith, Officer Chadrick Henley, and Officer Michael Davis testified.

## STATEMENT OF THE CASE

The credible testimony at the evidentiary hearing establishes the following:

Anthony Smith ("Smith") received a telephone call on the night of December 12, 2012, concerning a person police officers were looking for because that person had active warrants against him. Smith received information that the person and the car believed to belong to the subject (a blue Chevrolet Caprice) were last seen at Fountain Lake Apartments. Smith relayed this information to Officers Paul Rucker ("Rucker") and Chadrick Henley ("Henley") and told them that they should go to the Fountain Lake

AO 72A
(Rev. 8/82)

Apartments off Highway 17 in Brunswick, Georgia, to attempt to serve the warrants on this person.

As Henley arrived at Fountain Lakes Apartments, he noticed a Chevrolet Caprice parked in front of Apartment 1077, bearing the license plate number matching that which Smith had given him. Henley also noticed that the car's lights were on and that there was someone sitting in the driver's seat who was "shuffling around" or leaning over to the passenger's seat. Henley parked his patrol car in such a manner to prevent the person in the Caprice from driving away from the scene. Henley got out of his patrol car, as did the person in the Caprice, who was later identified as the Defendant. Henley ordered Defendant to stop and show his hands. Defendant asked Henley what was going on, but before Henley could respond, Defendant ran to Apartment 1077. Defendant entered the apartment and shut and locked the door. Rucker went to the backside of the apartment in case anyone attempted to leave the apartment through the back door. Henley notified dispatch and his supervisor (Smith) of the situation. Henley stated that, approximately 5 to 10 minutes later, the officers came up with a plan to enter the apartment, and this plan involved going to the property manager and asking for a key to unlock the door. The officers unlocked the door, and several officers entered the apartment. Defendant and the other people in the apartment were found in the upstairs area of the apartment. Defendant did not resist the officers, and he was arrested.

Davis, who is assigned to the Glynn-Brunswick Narcotics Enforcement Team ("GBNET"), was in his office along with Investigator Eric Melendez. Davis received information that Defendant was at 1077 Fountain Lake Apartments and had outstanding

2

warrants for failure to appear. Davis was familiar with Defendant based on a previous case and knew that Defendant had drug and obstruction charges against him and that Defendant was on felony probation from the Glynn County Superior Court. Davis went to Fountain Lake Apartments and spoke with Henley, who relayed information concerning the events of the night. Davis approached Defendant's car and looked into the front passenger side window by shining his flashlight into the window. Davis saw a plastic grocery bag containing a red towel through the window. Davis opened the car, which was unlocked, and picked up the bag. Davis stated that the bag felt too heavy to contain only a towel. Upon further investigation, Davis found a gun rolled up in the towel. Defendant's car was towed from the scene after Davis conducted an inventory search of the car.

## ISSUE PRESENTED

Defendant contends that the evidence obtained from the warrantless search of his car should be suppressed.

## DISCUSSION AND CITATION TO AUTHORITY

Defendant asserts that he had already been arrested at the time of the search of his car, and no extenuating circumstances existed to authorize this warrantless search. Defendant also asserts that Davis' mere suspicion that the grocery bag might contain contraband was insufficient to authorize the warrantless search under the plain view doctrine. Defendant further asserts that this search, which occurred after his lawful arrest, violated his constitutional rights. Defendant avers that there is no evidence that the Fourth Amendment waiver provision of his probation sentence is constitutional.

3

Additionally, Defendant contends that the inevitable discovery rule does not allow for the admission of the evidence discovered during the warrantless search of his car.

The Government asserts that the touchstone of the Fourth Amendment is reasonableness, and the officers' actions in this case were reasonable. The Government contends that Davis had probable cause to believe the car contained contraband. The Government also contends that the search was lawful based on Defendant's Fourth Amendment waiver. The Government further contends that, even if the search were found to be legally impermissible, the evidence would be admissible under the inevitable discovery doctrine. Finally, the Government contends that the Brunswick Police Department's ("BPD") towing policy supports Davis' decision to tow Defendant's car.

I.  **Plain View**

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Searches conducted "'without prior approval by [a] judge or magistrate[ ] are *per se* unreasonable under the Fourth Amendment[.]'" O'Rourke v. Hayes, 378 F.3d 1201, 1208 (11th Cir. 2004) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454—55 (1971)). However, the warrant requirement "is subject to certain reasonable exceptions." Kentucky v. King, ___ U.S. ___, 131 S. Ct. 1849, 1856 (May 16, 2011). Under the plain view doctrine, "if [a] police [officer is] lawfully in a position from which [he can] view an object, if its incriminating character is immediately

4

AO 72A
(Rev. 8/82)

apparent, and if the officer[ ] ha[s] a lawful right of access to the object, [he] may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 374—75 (1993). "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." Id. at 375; see also O'Rourke, 378 F.3d at 1208 (noting that no search, and thus no Fourth Amendment violation, has occurred when an officer uses his eyes in a place where the officer has the right to be). When an officer observes an object left by its owner in plain view, no search occurs because the owner has exhibited "no intention to keep [the object] to himself." Illinois v. Cabellas, 543 U.S. 405, 416 n.6 (2005) (Souter, J., dissenting).

Davis had the "right" to look into Defendant's car on the night in question. Upon looking into Defendant's car, Davis noticed a plastic grocery bag containing a red towel. While the Court recognizes Davis' testimony that he was aware of Defendant's criminal history relating to drug charges and that he had had a conversation with Henley about Defendant's actions on the night in question, there is no evidence that the incriminating nature of a plastic grocery bag containing a red towel was readily apparent to Davis. It was not until Davis opened the car door and lifted the grocery bag that Davis found the firearm wrapped in the towel. It was not until Davis continued his search beyond his plain view that the incriminating nature of the firearm became apparent, as Davis testified that he had knowledge that Defendant is a convicted felon. The plain view doctrine does not justify Davis' actions.

## II. Search Incident to Arrest

Another exception to the warrant requirement is a search made incident to a valid arrest. Chimel v. California, 395 U.S. 752, 762—63 (1969). This exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." United States v. Robinson, 414 U.S. 218, 230—34 (1973). "[P]olice may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" Arizona v. Gant, 556 U.S. 332, 335, 339 (2009) (quoting Chimel, 395 U.S. at 763). A "vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle[ ]" is not authorized. Id. "[C]ircumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." Id.

The evidence before the Court reveals that Henley shared with Davis information that Defendant had been in the Caprice and was leaning over into the passenger seat. However, the evidence also reveals that it had been at least 5 to 10 minutes after Defendant was last in the car that he was arrested inside the apartment. In addition, Davis testified that he knew Defendant had outstanding warrants based on his failure to appear in court. Davis also testified that he knew Defendant already had been arrested based on those warrants, leading to the reasonable conclusion that Defendant could not have accessed anything in the car. There was no evidence that Davis recovered any evidence relating to Defendant's failure to appear warrants by searching Defendant's car after he had been arrested and had not been in the car for at least five (5) minutes.

6

The search incident to arrest exception to the warrant requirement does not justify the search.

## III. Fourth Amendment Waiver/Reasonable Suspicion

Defendant contends that there was no showing that he made a knowing waiver of his Fourth Amendment rights as a condition of his probation. Additionally, Defendant contends that there is no indication that the waiver provision of his probation conditions is constitutional.

The Government avers that Defendant was on probation on the date of his arrest, and one of the conditions of his probation was that he waived his Fourth Amendment rights. The Government also avers that, in those cases where there is such a waiver, officers can search a probationer and his belongings without cause, if the waiver states those terms. The Order placing Defendant on probation only states "Fourth Amendment Waiver." The extent of that waiver has not been established. There is no evidence as to whether this waiver is only for the benefit of probation officers or if it is beneficial to law enforcement officers as well. The Government alleges that, even if there is an absence of an explicit waiver allowing a warrantless search, an officer needs no more than reasonable suspicion to conduct a search.

The only evidence regarding Defendant's waiver of his Fourth Amendment rights is found in the Final Disposition from the Glynn County Superior Court, in Case Number CR0900412-063. Defendant was sentenced to five (5) years' probation after a negotiated plea agreement on a felony offense of possession of cocaine. As part of his "other conditions", it is noted: "Fourth Amendment Waiver." (Gov't's Ex. 4). The Government cannot rely on this waiver to justify the search of Defendant's car.

7

Likewise, Davis did not have a reasonable suspicion that contraband was in the grocery bag under the circumstances to justify this warrantless search. "Reasonable suspicion consists of a 'sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy reasonable.'" United States v. Robinson, No. 12-12634, 2013 WL 1136575, at *2 (11th Cir. Mar. 19, 2013) (quoting United States v. Knights, 534 U.S. 112, 121 (2001)). "Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene." Id. (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). Reasonable suspicion "is based on the totality of the circumstances[.]" Id. (citing Garrett v. Athens-Clarke Cnty., 378 F.3d 1274, 1279 (11th Cir. 2004)).

The totality of the circumstances in this case does not support a finding that Davis' actions in searching Defendant's car were based on reasonable suspicion. While, as noted above, the undersigned recognizes that Davis had knowledge that Defendant had been involved in drug offenses and that Defendant was leaning over into the passenger seat of the car before he left the car several minutes before the search, officers were at Fountain Lakes Apartments to serve warrants against Defendant based on his failure to appear. Davis testified that Defendant's failure to appear was the basis for the warrants and that Investigator Melendez verified these warrants before they proceeded to the scene. Further, Defendant had been arrested at the time Davis determined that he would search Defendant's car. Under the totality of the circumstances, there is nothing before the Court indicating that Davis' belief that contraband relating to Defendant's failure to appear warrants was reasonable such that this warrantless search was permissible.

8

## IV. Inevitable Discovery

Defendant asserts that there is no evidence that police officers knew at the time that Apartment 1077 at the Fountain Lakes Apartments complex was not Defendant's residence or that his car was parked in front of that apartment illegally. Thus, Defendant maintains, the inevitable discovery doctrine does not permit the evidence obtained from an illegal search to be admissible during the trial of this case.

The Government alleges that Defendant's car "might have been seized and searched so that the contents could be catalogued, even if the particular police department's policy would not so provide." (Doc. No. 31, p. 7). The Government also alleges that the BPD's towing policy supports Davis' decision to tow Defendant's car and that the inventory search which would have occurred based on this decision would have inevitably led to the discovery of the firearm.

After arresting a person, officials may impound the person's vehicle in some circumstances. See United States v. Caudle, 430 F. App'x 809, 811 (11th Cir. 2011). Officials may perform a thorough inventory search of a legally impounded car that is conducted pursuant to an established procedure, which is another exception to the warrant requirement. United States v. Kalu, 485 F. App'x 366, 369 (11th Cir. 2012) (citing South Dakota v. Opperman, 428 U.S. 364 (1976), and United States v. O'Bryant, 775 F.2d 1528 (11th Cir. 1985)). "Opperman inventory searches are justified on several grounds: deterrence of false claims of loss made against police departments, safeguard against theft or careless handling of recovered articles, and protection of police from potentially dangerous material in articles held at the station house." O'Bryant, 775 F.2d at 1534 (citation omitted). "To show that an inventory search is lawful, the government

AO 72A
(Rev. 8/82)

must establish, first, that the officers had the authority to impound the defendant's vehicle, and second, that the officers complied with departmental policy in conducting the search." Kalu, 485 F. App'x at 369 (citing United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991)).

The BPD's policy for vehicle impoundment gives BPD personnel the authority to remove vehicles from roadways. (Gov't's Ex. 5). This policy provides, in relevant part, that:

> When a police officer finds a vehicle in violation of any provision of [Georgia] Code Section 40-6-202, the officer may have the vehicle removed . . . Officers are authorized to remove . . . vehicles for the following reasons:
>
> 3. If the person or persons in charge of such vehicles are unable to provide for its custody or removal[;or]
>
> 4. If the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before the magistrate[.]

(Id. at Ch. 5-11-4). The cited Georgia statute provides:

> Outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway; but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.

O.C.G.A. § 40-6-202. (emphasis added).

The evidence before the Court reveals that Defendant's car was legally parked in a parking lot at a privately-owned apartment complex at the time Davis decided to have Defendant's car towed. There is nothing indicating that the car was parked or otherwise left unattended in a roadway such that the decision to tow Defendant's car was

10

reasonable under the circumstances. Thus, it does not appear that Davis had lawful authority to determine that Defendant's car should be towed. In absence of this lawful authority, Defendant's car should not have been towed and an inventory search would not have been conducted.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress be **GRANTED**. The Government should not be permitted to use any evidence obtained as a result of the warrantless search of Defendant's car.

**SO REPORTED** and **RECOMMENDED**, this 19th day of August, 2013.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)